FILED
8/7/20
CLERK
U.S. BANKRUPTCY
COURT - WDPA

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | | |
|---|---|---|---|
| In re: | : | Case No.: | 19-24274-GLT |
| | : | Chapter: | 11 |
| Kristal C. Owens | : | | |
| | : | | |
| | : | Date: | 8/6/2020 |
| *Debtor(s).* | : | Time: | 01:30 |

## PROCEEDING MEMO

*MATTER:*   # 87 Con't Order to Show Cause Signed on 3/3/2020

[ Debtor and her counsel shall appear telephonically and show cause why the Court should not convert the case to Chapter 7 or dismiss the case with prejudice ]

Confirmation Hearing: # 152 - Chapter 11 Plan Dated 5/14/20
   # 166 - Objection filed by Toyota Lease Trust
   #191 - Objection filed by U.S. Bank N.A.
   # 199 - Certification of Counsel re: Stipulation filed by the IRS
   # 202 - Amended Summary of Ballots

*APPEARANCES:*

   Debtor:   Donald Calaiaro (Debtor on the phone)
   Toyota:   James Warmbrodt
   U.S. Bank:   Keri Ebeck
   IRS:   Jill Locnikar

*NOTES:* (1:30)

Calaiaro: Would you like to address the summary of ballots or objections first?

Court: Objections first.

Calaiaro: Toyota's objection is well-stated. I have recently been hospitalized. We will not attempt to force a finance of the vehicle and when the lease term is over the debtor will return the vehicle.

Warmbrodt: That's my understanding. I have prepared a stipulation. I've forwarded it to Attny Calaiaro. I was unaware he was in the hospital.

Calaiaro: We cannot agree on the second objection. These facts do not occur in a vacuum. We have a prior bankruptcy where this property had been abandoned to this creditor, and we thought the creditor had foreclosed on the property. They hadn't. This property is in Washington, DC and she continues to be liable for water, sewage, and taxes. We want the creditor to be forced to elect remedies. Accept the deed, foreclose, or abandon their claim within a reasonable time period. There's no equity in the property. This property may jeopardize the plan.

Ebeck: Within my objection, I filed specific case law - I understand what Attny Calaiaro is arguing. But case law says a lender can't be forced to take title. She can surrender the property, but there is no requirement to force the lender to do anything with it. My client hasn't decided if it wants to foreclose or not, and they can't be forced to. The debtor can sell if she wants to remove her name from the title, but I can see if she doesn't want to because there is no equity.

Court: Practically speaking, putting the law aside, is there an issue with a sale in the bankruptcy court?

Ebeck: If my client will be paid in full or if they agree to a short sale they have no issue with a sale though the court.

Court: Attny Calaiaro, is there any viable prospect of selling this property?

Calaiaro: The mortgage is $300,000-$400,000 above its value. My client would have to incur $20,000-$30,000 in legal fees to evict the squatters.

Court: There is no as is/where is sale prospect?

Calaiaro: I can't say there's no prospect, but I can't say I won't revisit it.

Court: The cases Attny Ebeck have cited, there is a limit to what the court can order a creditor to do and it cannot compel a creditor to take possession of its collateral. I'm not hearing of any contrary case law.

Calaiaro: I think you do have that authority - I have to ask my client if we're okay to ask the court to make new law. Most of the situations in which those cases arose are chapters 7 and 13. There is a significant cost to try to argue this point. When we're done today, I'm going to ask the court to give me a week to try to come to an agreement. Absent this issue we may be able to get confirmation.

Court: I'm not sure how executions work in DC, but the plan provisions want the creditor to either enforce their rights to foreclose or just sell the property - it says nothing about directing the lender to take title - it's just consenting to a foreclosure. Even if I could compel the creditor to adhere to this language, title would still be in the debtor's name.

Calaiaro: The problem is, if the debtor surrenders the property, they're only disenfranchising the estate and not the debtor herself. If the bank is still given a consent order in bankruptcy, it still leaves the title in the debtor's name.

Court: The court falls into the latter category. Absent something further at this stage, I'm not inclined to confirm a plan with that language. Anything further re: that objection?

Calaiaro and Ebeck: No.

Court: Turning to the stipulation with the IRS.

Calaiaro: Yes.

Court: The stipulation states that 2019 returns haven't been filed so the administrative claim is an estimate. What is the status of that liability?

Calaiaro: The debtor will have to answer that.

Court: Even though this is a telephonic hearing, I will require the debtor to be under oath.

[Debtor sworn under oath]

Court: Do you understand that even though you're on the phone, for all intents and purposes you're telephonically appearing in the courtroom, and all questions must be answered truthfully?

Ms. Owens: Yes.

Court: What is the status of your 2019 tax returns?

Ms. Owens: For the 2019 returns, my accountant has submitted an extension and they hope to have them filed at the end of this month.

Court: Is there an estimate of the liability?

Ms. Owens: I don't know, but I can ask.

Court: The stipulation says you'll pay those taxes in full on the effective date, and the IRS has estimated they're $12,000. I will need to know the actual number as it bears on plan feasibility. As to the secured and priority claims of the IRS, I see it's a 60 month installment at $1,097/month. Does the IRS support the plan subject to these terms on behalf of the various claims it holds?

Locknikar: Yes.

Calaiaro: As a result of the sale from this morning, some of that money will go to the IRS, reducing that monthly payment by about $200/month.

Court: What do you estimate the sales proceeds to cover?

Calaiaro: I'm having trouble doing that calculation. The proposed order will have a paragraph about that. My proposed order requires us to get a payoff amount because there might be excess funds.

Court: Even at that increased bid amount, there had been indications that the sale amount wouldn't be sufficient to cover the liens.

Calaiaro: That was true, but we're about $45,000 above.

Court: The Wells Fargo lien was about $125,000, and there's about $83,000 plus $35,000 projected to be owed to Wilkinsburg Borough and the School District.

Calaiaro: The lender never filed a proof of claim - and it might be nothing but I'd like to determine the payoff.

Court: The IRS stipulation is appropriate given the circumstances. And given that the debtor's returns will be filed by the end of the month I will approve the stipulation. Moving on, where we are in the context of the entire plan?

Calaiaro: I submitted an updated summary of ballots at Dkt. No. 202. The unsecured creditors have accepted, there are other creditors who are impaired who did not vote, there's a stipulation with Toyota and the IRS. And given a week we may be able to resolve the objection with Attny Ebeck's client. To the point where we'd need to schedule a cram down or defaulted cram down. I'll also proffer the following, she has a new contract for $2,000/month and she has another prospective contract. These would make the plan feasible.

Court: Any objection to the parties to the proffer?

Calaiaro, Ebeck, Warmbrodt, and Locknikar: None

Court: Does anyone want to cross examine the debtor?

Calaiaro, Ebeck, Warmbrodt, and Locknikar: No.

Court: A new contract at $2,000 - is that in addition to or replace any of the income shown in the MORs?

Calaiaro: My understanding is it's in addition.

Ms. Owens: It's not teaching, it's a contract for PCC Stride - an additional foster care contract. I'm the director of the program and I'll be receiving additional income from that contract of $25,000/year.

Court: So that's in addition to the current income?

Ms. Owens: Yes.

Court: Is the income you currently receive from PCC Stride through a salary or contract?

Owens: Salary.

Court: And that's projected to continue for the next 5 years?

Ms. Owens: Yes.

Court: What's the duration of the new contract?

Ms. Owens: 5 years.

Court: It seems like the debtor didn't receive a timely ballot from the unsecured creditors, they received an oral acceptance but nothing in writing.  Should the court extend the ballot deadline and should there be notice to those creditors?

Calaiaro: The creditor spoke to a member of my staff - they communicated their acceptance, but we didn't have it in our possession which is why we requested the extension.

Court: Do you have the actual ballot from that creditor?

Calaiaro: I have the amended summary with me (I'm working from home). It was accepted by an attorney of the creditor.

Court: Yes, but was it actually signed with an "/s/" signature and initials. Was that from someone in your firm?

Calaiaro: No, my firm would never do that.  It was signed by the creditor.

Court: What can you tell me about the property at 4402 Sellman?  If the debtor was successful in challenging the deed, the plan indicates she will include the debt in her plan obligations.

Calaiaro: I talked to my client and told her she needed to retain an attorney in Maryland.  She hasn't retained an attorney and will not dispute that proceeding.

Court: So that property is no longer part of this and won't be contemplated?

Calaiaro: Correct.

Court: Looking at Section 7.9.2 - disputed claims in class 9.  Are we talking about the exclusive right to dispute a claim and the exclusive right to enter into a settlement after a final decree?

Calaiaro: That clause was poorly drafted.  As long as the case is open I will need court authority to enter into a settlement.

Court: So the deadline to object to claims will be the date within the plan or as set out by court order?

Calaiaro: Yes.

Court: In regards to student loans: in June there were indications in the MORs that student loan payments were still being made.  I want to hear why that is still going on.

Calaiaro: After the hearing, I personally communicated the court's concerns and told her how the payment had to stop.  She can speak on it.

Ms. Owens: From my knowledge I wasn't aware they were still taking the money out.  Attny Calaiaro told me to stop the payments, unless they're still taking the withdrawals out.  But I thought they had stopped.

Court: There was a representation in February that these payment could not continue.

Ms. Owens: I will have to look into the student loan portal to make sure it's not being removed from my bank account because it's being taken out automatically.

Court: Do you have some proof you stopped the withdrawals?

Ms. Owens: I went into the system and would have to do that again so that they can't keep removing money from my account.

Court: I've noted before you've had issues with other cases.  This is your 7th bankruptcy case, and this was an issue pointed out long ago, and payments are still being shown.  The other problem is if these student loan obligations were listed on your schedules. What are these loan payments for?

Ms. Owens: I believe it's under $4,000 for classes I've taken in terms of working towards a licence in Maryland.  That's the only obligations I'm aware I have, I listed it in the obligations.

Court: Did you list it on the schedule?

Ms. Owens: Yes.

Court: What was the name of the creditor?

Ms. Owens: I will have to look.  One is Cappella, and I'm looking to see the source because I don't remember the student loan.

Calaiaro: On April 6 we amended the schedules to include the loan that wasn't previously listed.

Ms. Owens: It's Great Lakes.

Calaiaro: The court asked us to look into it, and we amended the schedules in accordance with your instructions.

Court: When was this debt incurred?

Ms. Owens: Sometime in 2018.

Court: So prior to the bankruptcy?

Ms. Owens: Yes.

Court: You mentioned it's less than 4,000?

Ms. Owens: I was able to log into the system and the balance is $3,489.68. The auto pay is off, it seems like it is.  I'll send the payment history.  The last payment was May 15.

Court: Anything from the other parties?

All: None

Court: At this point, it's obvious confirmation is premature.  Attny Calaiaro has asked for time to remedy some of these issues.  I will continue this hearing pending submission of the following: stipulation with Toyota; whether there will a resolution with US Bank and if not, whether there is supplemental briefing the parties wish to submit to the court.  I'd like to understand and identify what the 2019 income tax liability is so I can understand the plan feasibility on the effective date, and I expect a need to put creditors on notice of the anticipated extension of the balloting deadline.  With respect to the issues here, the student loan issue is troublesome - these were simple directions the Court had given and it shouldn't have taken this long to be addressed. But the amounts don't seem to be material.  I don't have an objection filed of record by any unsecured creditor that would trigger a disposable income analysis.  It's whether these remaining issues can be satisfied.

Calaiaro: I only have a docket sheet, I'd like to make an oral motion to extend the deadline for confirmation.

Court: I have enough here to believe there's still a confirmable plan in prospect.  As far as continued hearing dates, September 3, 2020 or September 15?

Calaiaro: September 3 is fine.

Court: Then these matters are continued to September 3 at 11:00 am.  File a status report by August 27 so we know what issues are still live.

Calaiaro: Specifically you expect an answer about her estimated tax liability for 2019?

Court: I'm expecting by August 27 that the debtor will have an estimate of her 2019 tax liability and that by the hearing on September 3 her returns will be filed.

Calaiaro: Will you require the debtor to be present on September 3?

Court: I won't require it, but it's her option to join if she would like.

*OUTCOME:*

1. Chapter 11 Plan Dated 5/14/20 [Dkt. No. 152] is CONTINUED to September 3, 2020 at 11:00 a.m.  The continuance shall afford the Debtor time to:  (a) reach agreement on a written stipulation with Toyota Lease Trust; (b) pursue a resolution of the dispute with U.S. Bank, NA as to the plan language; (c) complete and file her 2019 federal income tax return; and (d) seek approval of an extension of the July 30, 2020 plan balloting deadline.   [Text Order to Issue]

2. Order to Show Cause [Dkt. No. 87] is CONTINUED to September 3, 2020 at 11:00 a.m. [Text Order to Issue]

3. Debtor's Oral Motion to Extend Time to Confirm Plan is GRANTED through September 3, 2020 [Text Order to Issue]

4. Stipulation with the IRS [Dkt. No. 199] is GRANTED [HT to Issue Proposed Order at Dkt. No. 199-1]

5. On or before August 27, 2020, the Debtor shall file a status report detailing what disputed issues remain outstanding and whether the plan objections have been resolved [Text Order to Issue]

**DATED:**  8/6/2020